IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHAD R. HARRIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-2279-K-BN |
| | § | |
| AMAZON.COM INC., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Chad R. Harris filed this *pro se* lawsuit alleging Title VII claims of sex discrimination and retaliation, paying the filing fee to do so. *See* Dkt. No. 3.

Defendant Amazon.com, Inc. moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), Harris moved to amend the complaint, and the Court granted the motion to dismiss, terminated the motion to amend as unnecessary, and dismissed Harris's lawsuit with prejudice on May 8, 2023. *See Harris v. Amazon.com Inc.*, No. 3:22-cv-2279-C-BN, 2023 WL 3311099 (N.D. Tex. Apr. 18, 2023), *rec. adopted*, 2023 WL 3313590 (N.D. Tex. May 8, 2023) ("*Harris I*").

Harris noticed an appeal of the judgment on May 25, 2023. *See* Dkt. No. 27.

On August 18, 2023, the en banc United States Court of Appeals for the Fifth Circuit entered its decision in *Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023), in which it "made clear that Title VII requires a broader reading than [its] 'ultimate employment decision' line of cases permitted and thus 'end[ed] that interpretive incongruity' by removing that requirement," *Harrison v. Brookhaven*

*Sch. Dist.*, 82 F.4th 427, 428 (5th Cir. 2023) (per curiam).

The Fifth Circuit then vacated the judgment in *Harris I* and remanded "to allow the district court, in the first instance, to address Amazon's motion to dismiss in light of *Hamilton* and *Harrison*." *Harris v. Amazon.com Inc.*, No. 23-10556, 2024 WL 688255 (5th Cir. Feb. 20, 2024) (per curiam) ("*Harris II*").

After remand, this lawsuit was reassigned to United States District Judge Ed Kinkeade, and Judge Kinkeade re-referred it to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

Because Amazon did not have the benefit of *Hamilton* and *Harrison* when it moved to dismiss Harris's claims, the Court allowed Amazon to supplement its prior motion to dismiss. *See* Dkt. No. 36. Amazon did so. *See* Dkt. No. 37. Harris then filed a response, and Amazon replied. *See* Dkt. Nos. 38-40.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion to dismiss in part.

## Applicable Background

As set out by the Fifth Circuit,

> [i]n his complaint, Harris alleged the following: On November 28, 2021, he was hired to work in Amazon's Coppell, Texas, facility as a "packer." The job description for this position stated that the duties included, inter alia, packaging, labeling, and inspecting orders to be delivered. However, within weeks of starting, Amazon assigned Harris other duties, which became "more labor intensive." Harris ultimately was "moved into 'Tote Running,' which is considered by most if not every packer, as the hardest physical job in the packing area," and "[t]his assignment was only given to men."
> According to Harris, "most of the time during peak season," two

tote runners were assigned to approximately seventy to seventy-five packers. A packer would stack twelve totes, and then the tote runner would move each stack of twelve totes to the end of the line. Tote runners would move the stacks by loading them on to a cart, which could hold eight stacks. Once loaded, the cart weighed roughly 500 pounds. Tote runners would then push the cart about one-eighth of a mile, remove and put the totes in a standing area, and then push the empty cart (which weighed about 120 pounds) back to the beginning of the line to repeat. Tote runners would do this for ten hours a day. Harris contends that "measured by sports watches, the daily distance traveled per day was consistently between twelve and twenty miles." Harris "reported his concerns that only men pushed totes." The response from his managers was that tote running was "too hard for women."

When Harris on occasion asked to be relieved of tote running due to physical exhaustion, management would initially agree, but then never follow through. On April 13, 2022, Harris told his manager that "his knees experienced pain/agony" and that he did not want to push the cart on the longer route. Harris was told to go home or ask for accommodations, but Harris "did not wish to report any prior pains in [his] knees."

On July 27, 2022, Harris filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Harris alleged that Amazon was discriminating against him on the basis of his sex because female packers were not required to be tote runners like male packers. On August 15, 2022, Harris was sent to train in another area of the building called "stow." Harris alleged that stow was a less desirable job assignment and that he was sent there in direct retaliation for filing his EEOC complaint. The position is less desirable because Harris no longer has the ability to receive "voluntary time off" and his meal breaks are now at 10:00 A.M. and 2:00 P.M., instead of 11:00 A.M. and 3:00 P.M. He also alleges that he has physical pain and suffering in his knee area and in both legs. He has pain in his knees while walking up stairwells and cramps in the same area at night while asleep. Prior to his tote runner job, he did not have these pains, and the pain has persisted even after being removed from tote running.

Harris alleges as his first cause of action, discrimination in violation of Section 2000e-2 of the Civil Rights Act. He asserts that he has been denied the same terms and conditions of employment available to women by placing him in a substantially more physically demanding position. Harris alleges that he has suffered mental anguish, emotional distress, depression, humiliation, loss of self-esteem, and emotional pain and suffering, as well as physical pain and suffering. For his second cause of action, Harris alleges that Amazon unlawfully retaliated against him for filing an EEOC complaint when they transferred him to

stow.

In response, Amazon filed an answer as well as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Amazon argued that Harris's first cause of action – his discrimination claim – should be dismissed because he failed to allege that he suffered an "adverse employment action," which is a required element of a discrimination claim. Amazon similarly argued that Harris's second cause of action – his retaliation claim – should also be dismissed for lack of a "materially adverse" employment action. The magistrate judge noted that under this Court's jurisprudence, "adverse employment action" meant an "ultimate employment decision" such as "hiring, firing, demoting, promoting, granting leave, and compensating." The magistrate judge therefore recommended that Harris's complaint be dismissed. Overruling Harris's objections, the district court adopted the magistrate judge's recommendation and dismissed Harris's complaint. Harris filed a timely notice of appeal.

*Harris II*, 2024 WL 688255, at *1-*2.

### **Legal Standards**

Considering a motion under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g., Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

And, while Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that a plaintiff allege more than labels and conclusions. So, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

And, so, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive

plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *cf. Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (While "*[p]ro se* complaints receive a 'liberal construction,'" "mere conclusory allegations on a critical issue are insufficient." (cleaned up)).

Applying these general standards to this context, "an employment discrimination case, the complaint need not contain specific facts establishing a prima facie case of discrimination under the framework set forth ... in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023) (cleaned up).

"But a plaintiff is still required to plead sufficient facts *on all of the ultimate elements* of [each] claim." *Id.* (cleaned up; emphasis in original).

And, at this stage, "a plaintiff must plead two 'ultimate elements' in order 'to support a disparate treatment claim ... : (1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* [a] protected status.'" *Thomas v. Dall. Indep. Sch. Dist.*, No. 23-10882, 2024 WL 2874367, at *4 (5th Cir. June 7, 2024) (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019); emphasis in *Cicalese*).

That is,

> [a] complaint need not allege each prong of the prima facie test for disparate treatment ... ; to support a disparate treatment claim under Title VII, though, it must plausibly set out facts that the defendant took the adverse employment action against a plaintiff *because of* [a] protected status. [Accordingly, a] plaintiff must allege facts, direct or circumstantial, that would suggest [the employer's] actions were based

> on [the plaintiff's protected status] or that [the employer] treated similarly situated employees of other races or national origin more favorably.

*Sanchez v. Chevron N. Am. Exploration & Prod. Co.*, No. 20-30783, 2021 WL 5513509, at *5 (5th Cir. Nov. 24, 2021) (per curiam) (cleaned up; emphasis in origial).

"Similarly, for a retaliation claim, a plaintiff only needs to plausibly 'allege facts going to the ultimate elements of the claim to survive a motion to dismiss.'" *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *4 (5th Cir. Oct. 8, 2024) (per curiam) (quoting *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021)).

Those "ultimate elements" are "that 1) [the plaintiff] engaged in protected activity, 2) she suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action." *Wright*, 990 F.3d at 433 (cleaned up).

And, "[i]n either context, '[a] court ... inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss.'" *Smith*, 2024 WL 4442040, at *4 (quoting *Cicalese*, 924 F.3d at 767).

## Analysis

As to Harris's claims of sex discrimination and retaliation, "Title VII forbids an employer from taking an adverse employment action against an employee because of [their] sex." *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 217 (5th Cir. 2023) (citations omitted). "Title VII also forbids retaliation as a form of sex-based discrimination." *Id.* at 224.

An adverse employment action is an essential element for both claims. *See,*

*e.g., id.* at 218, 224. And such an action "need only be a term, condition, or privilege of employment." *Hishon v. King & Spalding*, 467 U.S. 69, 77 (1984).

And, although "*Hamilton* recognized that Title VII 'does not permit liability for de minimis workplace trifles,'" the Court of Appeals "declined to address 'the precise level of minimum workplace harm' necessary to sustain a discrimination claim.'" *Yates v. Spring Indep. Sch. Dist.*, 115 F.4th 414, 420 (5th Cir. 2024) (quoting *Hamilton*, 79 F.4th at 506).

But, "as precedent informs us, the phrase 'terms, conditions, or privileges' should be broadly construed." *Harrison*, 82 F.4th at 430 (citing *Hamilton*, 79 F.4th at 502-04).

"For example, the phrase is not limited to 'economically adverse employment actions.'" *Id.* (quoting *Hamilton*, 79 F.4th at 504; citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) ("We have repeatedly made clear that although the statute mentions specific employment decisions with immediate consequences, the scope of the prohibition is not limited to 'economic' or 'tangible' discrimination, and that it covers more than 'terms' and 'conditions' in the narrow contractual sense." (cleaned up))); *see also Smith v. McDonough*, No. SA-22-CV-01383-JKP, 2023 WL 5918322, at *5 (W.D. Tex. Sept. 8, 2023) (applying *Hamilton* to find that "Smith's allegations of discrimination based on criticism and scrutiny of his work and having his telecommuting agreement revoked could potentially support a finding that he was denied the terms, conditions, and privileges of employment"); *Johnson-Lee v. Tex. A&M Univ. – Corpus Christi*, ___ F. Supp. 3d ___, No. 2:23-CV-00229, 2024 WL

3196764, at *4 (S.D. Tex. Apr. 11, 2024) ("The Fifth Circuit has held that working undesirable shifts is a harm that is 'far more than "de minimis."' Similarly, it seems that having to perform undesirable work assignments that are outside an employee's job duties should be enough as well." (quoting *Hamilton*, 79 F.4th at 505)).

And, after *Hamilton*'s reembrace of Title VII's plain text, the United States Supreme Court, examining the same text, "disapprove[d]" of the rejection by lower courts of adverse employment claims based on transfers "on the ground that the transfer did not cause [the plaintiff] a 'significant' employment disadvantage": "Although an employee must show some harm from a forced transfer to prevail in a Title VII suit, she need not show that the injury satisfies a significance test. Title VII's text nowhere establishes that high bar." *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 350 (2024); *see, e.g.*, *Zuniga v. City of Dall., Tex.*, No. 3:23-cv-2308-D, 2024 WL 2734956, at *3 n.3 (N.D. Tex. May 28, 2024) ("[T]o make out a Title VII discrimination claim based on transfer to a new role, a plaintiff 'must show *some* harm' – not 'significant' harm – 'respecting an identifiable term or condition of employment.'" (emphasis in original; quoting *Muldrow*, 601 U.S. at 974)); *see also Liao v. Univ. of Tex. at San Antonio*, SA-22-CV-01359-XR, 2024 WL 4564278, at *9 (W.D. Tex. Oct. 23, 2024) (confronting what counts as a discriminatory adverse action after *Hamilton* and *Muldrow* and concluding that, while "[t]he Fifth Circuit has not definitively addressed the precise level of minimum workplace harm necessary to establish an adverse action, besides stating that something more than de minimis harm is required," "[b]eing placed in a disadvantageous situation likely suffices"

(cleaned up)).

But, unchanged by either *Muldrow* or *Hamilton*, "a plaintiff seeking to establish a retaliatory adverse employment action 'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826-27 (5th Cir. 2019) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006)), *abrogated on other grounds by Hamilton*, 79 F.4th 494.

And, so, now, "[c]ompared to the discrimination context, an 'adverse employment action' for retaliation claims under Title VII appears to have a higher bar." *Liao*, 2024 WL 4564278, at *9.

And the Supreme Court, in *Muldrow*, explained why this is so:

> If an action causes less serious harm, … it will not deter Title VII enforcement; and if it will not deter Title VII enforcement, it falls outside the purposes of the ban on retaliation…. [But t]he anti-discrimination provision … simply seeks a workplace where individuals are not discriminated against because of traits like race and sex. The provision thus flatly prevents injury to individuals based on status, without distinguishing between significant and less significant harms.

601 U.S. at 357-58 (cleaned up).

Applying these standards to Harris's two sex-based claims, he has alleged the two ultimate elements that allow a discrimination claim to proceed, but he has not met the higher bar as to the retaliation claim, which the Court should now dismiss with prejudice.

Taking up the retaliation claim first, the legal landscape has shifted significantly since the Court dismissed Harris's lawsuit – but not as to retaliation

- 10 -

claims, as explained above. And, so, the ground under the dismissal of that claim remains solid.

As the Court previously explained,

> in the context of a retaliation claim, the adverse employment actions that Harris alleges are not materially adverse. That is, in this context, "close scrutiny, denying days off, failing to alter a schedule, or assigning a heavy workload are not considered adverse actions." *EEOC v. Bass Pro Outdoor World, LLC*, No. 4:11-CV-3425, 2013 WL 1124063, at *6 & n.11 (S.D. Tex. Mar. 18, 2013) (collecting cases); *see Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 347-48 (5th Cir. 2016) ("[A] reassignment that requires additional tasks is not materially adverse if it is not accompanied by any other change in the employee's status. And a merely '[u]ndesirable work assignment' does not result in material adversity to the assigned employee. Rather, as we have repeatedly held, a 'purely lateral transfer' is not an adverse employment action." (citations omitted)).
>
> Regarding the [voluntary time off] claim, Harris's allegations reflect that this "benefit" was tied to the workload of his old assignment, and his allegations should not be construed as Amazon's denying him leave. Similarly, just because Harris had to adjust his lunch schedule to a time that he alleges is less desirable, this change, while maybe "materially inconvenient," is not materially adverse. *Benford v. Milwaukee Elec. Tool Corp.*, No. 4:19-CV-179-DMB-JMV, 2021 WL 735642, at *6 (N.D. Miss. Feb. 25, 2021) ("[F]or 'a change in work schedule to be sufficiently adverse for purposes of plausibly alleging a retaliation claim, there must be some extenuating circumstance, of which the plaintiff alleges her employer was aware, that transforms such a change from merely inconvenient to materially adverse.' Because Benford has made no allegation of extenuating circumstances which would suggest that the change in lunch hour would have any adverse impact on her, it follows that this change may not be considered materially adverse. Her retaliation claim premised on this action must fail." (citation omitted)).

*Harris I*, 2023 WL 3311099, at *7 (citation modified).

And, so, because Harris has not alleged facts to support a required element, the Court should also dismiss his claim of retaliation in violation of Title VII.

But Harris has met the now-lower bar to allege a discriminatory adverse

action. That is, considering the cases that have addressed this ultimate element after *Hamilton*, the undersigned cannot agree with Amazon that all that Harris has alleged are de minimis workplace trifles. Instead, he has alleged that Amazon disadvantaged him because of his sex:

> Harris alleges that in November 2021 he was hired as a Packer at an Amazon facility in Coppell, Texas, *see* Dkt. No. 3, ¶ 2, and that, throughout his employment, Amazon discriminated against him "by denying him the same terms and conditions" of employment "available to women," thus "subjecting him to disparate working conditions, denying him terms and conditions of employment equal to that of his coworkers who do not belong to the same protected categories," and "placing him in substantially more physically demanding position[s,]" *id.*, ¶ 39.
> As these allegations reflect, Harris alleges sex discrimination on the basis that, although he was hired as a Packer, he was given other assignments requiring more strenuous labor, and that, while some women were also given more physically demanding assignments, Harris was ultimately moved to Tote Running, "the hardest physical job in the packing area," "only given to men." *Id.*, ¶ 3; *see also id.*, ¶ 10 ("Many of Mr. Harris' colleagues, both men and women observed a consistent practice of scheduling men only for certain harder labor assignments.").

*Harris I*, 2023 WL 3311099, at *4.

This is now enough to advance an employment discrimination claim beyond the pleadings. *Cf. Garrett v. Kohls Distrib. eFulfillment Ctr.*, No. 3:23-cv-2525-B-BN, 2024 WL 3237184, at *6 (N.D. Tex. June 7, 2024) ("[W]here (particularly *pro se*) plaintiffs provide enough facts to support each element, the case should generally move to the next stage, keeping in mind that '[a] motion to dismiss for failure to state a claim is not meant to resolve disputed facts or test the merits of a lawsuit' but 'instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief.'" (quoting *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020))), *rec. accepted*, 2024 WL 3240656 (N.D. Tex. June 28,

2024).

## Recommendation

The Court should grant in part and deny in part the motion to dismiss the complaint [Dkt. No. 6], as supplemented on remand, *see* Dkt. Nos. 36-40, to the extent that the Court should dismiss with prejudice Plaintiff Chad R. Harris's Title VII retaliation claim.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 14, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE