IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHAD R. HARRIS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:22-CV-2279-K-BW |
| | § | |
| AMAZON.COM INC., | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Chad R. Harris ("Harris") filed this pro se lawsuit on October 12, 2022. (*See* Dkt. No. 3.) The case was referred to United States Magistrate Judge David L. Horan for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. (See Dkt. No. 1.) Judge Horan was recused on April 1, 2025, and the referral was reassigned to the undersigned United States magistrate judge. (*See* Dkt. No. 67.)

Both parties have filed motions for summary judgment. On June 17, 2025, Harris filed a "second motion for summary judgment."[1] (Dkt. No. 72.) Amazon filed a motion for summary judgment (Dkt. No. 83) on September 12, 2025.

Having considered the relevant pleadings, the evidence, and the applicable law, the undersigned **RECOMMENDS** that Harris' motion for summary judgment

---

[1] Harris previously filed a "first motion for summary judgment" on February 27, 2025, which he later withdrew. (*See* Dkt. Nos. 60, 66, 69).

((Dkt. No. 72) be **DENIED**, and that Amazon's motion for summary judgment

(Dkt. No. 83) be **GRANTED**.

## I. BACKGROUND

### A.    Procedural Background

Harris filed this pro se lawsuit on October 12, 2022, alleging Title VII claims

of sex discrimination and retaliation against Defendant Amazon.com Services LLC

("Amazon").  (*See* Dkt. No. 3.)  Amazon moved to dismiss the complaint under

Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 6), after which Harris moved to

amend the complaint (Dkt. No. 11).  The Court granted the motion to dismiss,

terminated the motion to amend as unnecessary, and dismissed Harris's lawsuit with

prejudice on May 8, 2023.  (*See* Dkt. Nos. 20, 25.)  Harris noticed an appeal of the

judgment on May 25, 2023.  (*See* Dkt. No. 27.)  *See Harris v. Amazon.com Inc.*, No.

3:22-cv-2279-C-BN, 2023 WL 3311099 (N.D. Tex. Apr. 18, 2023), *adopted*, 2023 WL

3313590 (N.D. Tex. May 8, 2023) ("*Harris I*").

On August 18, 2023, the United States Court of Appeals for the Fifth Circuit

entered its decision in *Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023) (en

banc), in which it "made clear that Title VII requires a broader reading than [its]

'ultimate employment decision' line of cases permitted and thus 'end[ed] that

interpretive incongruity' by removing that requirement," *Harrison v. Brookhaven Sch.

Dist.*, 82 F.4th 427, 428 (5th Cir. 2023).  The Fifth Circuit thereafter vacated the

judgment in *Harris I* and remanded the case "to allow the district court, in the first

instance, to address Amazon's motion to dismiss in light of *Hamilton* and *Harrison*."

*Harris v. Amazon.com Inc.*, No. 23-10556, 2024 WL 688255 (5th Cir. Feb. 20, 2024) (unpublished) ("*Harris II*"). Because Amazon did not have the benefit of *Hamilton* and *Harrison* when it moved to dismiss Harris's claims, the Court allowed Amazon to supplement its prior motion to dismiss (*see* Dkt. No. 36), which it did (*see* Dkt. No. 37), after which Harris filed a response (*see* Dkt. No. 39), and Amazon replied (*see* Dkt. No. 40).

On November 14, 2024, Judge Horan entered Findings, Conclusions, and Recommendation (Dkt. No. 41 ("FCR")) recommending that the Court grant in part and deny in part Amazon's motion to dismiss the complaint (Dkt. No. 6), as supplemented on remand (*see* Dkt. Nos. 36-40). Specifically, Judge Horan recommended that the Court dismiss Harris's Title VII retaliation claim with prejudice, but his employment discrimination claim should advance beyond the pleading stage because Harris sufficiently alleged that Amazon disadvantaged him because of his gender. (*See* Dkt. No. 41 at 12.) The District Judge accepted the FCR on December 3, 2024. (*See* Dkt. No. 42.)

Thereafter, on January 29, 2025, Judge Horan issued the initial scheduling order setting forth the following deadlines: February 28, 2025, as the deadline to amend the pleadings and join additional parties; July 30, 2025, as the deadline to file a motion to compel; August 13, 2025, as the deadline for completion of discovery; and September 12, 2025, as the deadline to file dispositive motions. (*See* Dkt. No. 55.) On March 26, 2025, Harris filed an Amended Complaint with Jury Demand

(Dkt. No. 65), to which Amazon filed an Answer on April 10, 2025 (Dkt. No. 68).

On May 27, 2025, Harris filed a second motion for summary judgment (Dkt. No. 72), a brief in support (Dkt. No. 72-1 ("P. MSJ Br.")), and an appendix consisting of several independent attachments designated as Exhibits H-1 through H-31 (Dkt. Nos. 72-2-72-29). Harris's exhibits are not marked by exhibit number and are not identified other than those occasions in which he mentions them in his brief—and even then, it is not always clear to which exhibit he is referring.[2] Amazon filed a response in opposition (Dkt. No. 73), a brief in support (Dkt. No. 74 ("D. Resp. Br.")), and an appendix (Dkt. No. 75 ("D. Resp. App.")). Harris filed a reply (Dkt. No. 76 ("P. MSJ Reply") with attachments (Dkt. No. 77).

Amazon also filed a motion for summary judgment (Dkt. No. 83), a brief in support (Dkt. No. 84 ("D. MSJ Br.")), and an appendix (Dkt. No. 84-1 ("D. MSJ App.")) on September 12, 2025. Harris filed a response in opposition (Dkt. No. 85 ("P. Resp. Br.")) with a two-page attachment described as "deposition missing pages" (Dkt. No. 85-1).[3] Amazon filed a reply. (Dkt. No. 86 ("D. MSJ Reply").)

---

[2] Harris's appendix does not comply with N.D. Tex. L.R. 56.6(b)(3)'s requirement that each page "must be numbered sequentially[.]" Although the undersigned does not strike the appendix for failure to comply with local rules, *see Streat v. Hammond*, No. 3:07-CV-1882-P, 2009 WL 10678838, at *1 n.1 (N.D. Tex. Oct. 26, 2009), it points out the noncompliance to emphasize the importance of compliance with the local rule's requirement. *See State Farm Life Ins. Co. v. Bryant*, No. 3:18-CV-1628-L, 2019 WL 7938266, at *6 (N.D. Tex. May 16, 2019) (Compliance with the Court's local rules "streamlines the resolution of motions by making it easier for the court to locate materials in appendices that are relied on by the parties."). Because Harris's exhibits are not marked by exhibit number, the Court refers to the appropriate ECF page number when citing to these exhibits.

[3] As with Harris's other exhibits, this exhibit is not marked by exhibit number, and the Court therefore refers to the appropriate ECF page number when citing to this exhibit.

Accordingly, both motions are ripe and ready for determination.  Harris's Amended Complaint (Dkt. No. 65 ("Complaint") ("Compl.")) is the operative complaint in this action.

**B.    Relevant Factual Background**

Harris alleges that Amazon discriminated against him on the basis of his gender because he was assigned to "tote running" for various shifts for an approximately five-month period from December 2021 through April 2022, when he requested to be removed from the assignment.  (*See generally* Compl.)  Harris was hired by Amazon in November 2021 as a warehouse associate (or Fulfillment Associate) at its FTW6 location.  (D. MSJ App. 7, 9-11, 102; Compl. ¶ 2.)  Harris alleges he was hired as a "Packer," "a somewhat light duty assignment," whose job (among other things) "is to package and supervise stock arrangements [and] ensur[e] a reasonable amount of stock is available for shipping."  (Compl. ¶¶ 2, 21.)

Within weeks of starting, Amazon started using him in different assignments that were "more labor intensive."  (Compl. ¶ 3.)  Harris understood, however, that Amazon utilized "labor sharing," which meant that his assignment and his assigned work area could vary based on needs.  (D. MSJ App. 75.)  He did not know how Amazon determines these staffing decisions or who decides where an associate will be assigned on a particular day, but he "assumed" that the manager on the shift makes the determinations.  (D. MSJ App. 29-30.)  Harris ultimately was "moved into 'Tote Running,' which he alleges is considered by most if not every packer, as the hardest physical job in the packing area."  (Compl. ¶ 3.)  Unlike other packing

5

area assignments that used both men and women, "[t]his assignment was only given to men." (*Id.*; *see also id.* at ¶ 27.) Harris alleges that "[t]he only way to be removed [from a job] would be to file for accommodations, saying you have an injury." (*Id.*)

According to Harris, "most of the time during peak season," tote runners were assigned to approximately seventy to seventy-five packers. (Compl. ¶ 4.) A packer would stack twelve totes[4]; the tote runner would then move each stack of twelve totes to the end of the line then move the stacks by loading them onto a cart that could hold eight stacks; once loaded, the cart weighed roughly 500 pounds. (*Id.*) Tote runners would then push the cart about one-eighth of a mile, remove and put the totes in a standing area, and then push the empty cart (which weighed about 120 pounds) back to the beginning of the line to repeat; tote runners would do this for ten hours a day. (*Id.*) Harris contends that "measured by sports watches, the daily distance traveled per day was consistently between twelve and twenty miles." (*Id.*)

Amazon explains that Harris was assigned to the singles packing department at FTW6. (D. MSJ App. 18, 19.) FTW6 is a large Amazon fulfillment center located in Coppell, Texas. (D. MSJ App. 8-9.) Amazon represents that Fulfillment Associates performed a number of different duties and responsibilities and were required to be able to lift up to 49 pounds, push up to 60 pounds, and "use carts, dollies, hand trucks, and other gear to move items around." (D. MSJ App. 13-14.)

---

[4] Harris testified, however, that a tote runner has discretion as to how many totes he actually collects before taking the empty totes to the tote staging area. (D. MSJ App. 40.)

In the singles packing department, Fulfillment Associates place single, individual items (as opposed to multiple items) weighing less than 25 pounds into boxes for shipment. (D. MSJ App. 20, 21.) These items arrive at a packer's station via a conveyor belt in a tote, which is a plastic bin approximately 23.5 inches by 18 inches by 16 inches. (D. MSJ App. 39.) Once a packer empties a tote by packing each individual item in the tote into a box for shipment, the packer sets the tote aside and begins packing the items that arrive in a new tote. (D. MSJ App. 117.) According to Amazon, "the Singles Packing department is the least physically demanding department within a Fulfillment Center." (D. MSJ App. 95-96.)

Amazon further explains that "[o]n any given shift, Amazon may assign a Fulfillment Associate (in any department) to a 'direct path' or 'indirect path.'" (D. MSJ App. 117.) A direct path involves packing the singles items into a box for shipment as described above. (D. MSJ App. 21-22.) Indirect paths within singles packing include tote running, water spider, SLAM, and problem solvers. (D. MSJ App. 22-24, 85-88, 117.) Amazon avers that it determines these assignments on a day-to-day and shift-to-shift basis depending on business needs. (D. MSJ App. 118, 121.) It uses computer software called "StaffingCommandCenter" ("SCC") to determine roles for that particular shift. (D. MSJ Br. at 7-9; D. MSJ App. 118, 121.) SCC makes assignments based on projected need for that shift, as well as the associates scheduled to work that shift. (D. MSJ App. 118, 121.) SCC also considers what indirect paths the scheduled associates had been trained to undertake and had previously performed. (D. MSJ App. 118.) Thus, if a particular associate

had not received training in a particular indirect path, SCC would not assign that associate to the role. (D. MSJ App. 118, 121.) A shift manager may adjust the assignments from SCC based on the actual personnel available, as well as any unforeseen specific business demands for that particular shift. (D. MSJ App. 118.) Amazon maintains that all indirect job assignments, including tote running, are based on trained personnel available for the needs and demands of that shift, not based on gender. (D. MSJ App. 118, 121-122, 124-125.)

Managers communicated assignments to the Fulfillment Associates for a shift during a morning meeting. (*See* D. MSJ App. 25, 26-27, 28.) These assignments were reflected on a whiteboard and on a computer monitor. (D. MSJ App. 28-29.) The computer monitor listed employees' names with the location of their packing stations for the day, or if they had been assigned to an indirect path, the whiteboard specifically listed which indirect path those associates had been assigned for that shift. (D. MSJ App. 28-29.) These initial assignments did not necessarily mean that a particular associate would work that direct path or indirect path for the entire shift, and associates were commonly reassigned to different roles at various points during a shift based on the unique needs of that shift. (D. MSJ App. 114.)

According to Amazon, when Harris started his employment with Amazon in November 2021, he worked exclusively as a packer (the direct path within singles packing) (D. MSJ App. 31-32, 33), reporting to Area Manager Garrett Capps (D. MSJ App. 12, 102), but after about three weeks, Capps asked Harris to train on tote running, and Harris agreed (D. MSJ App. 118, 35, 36, 37). The tote running

8

assignment involves gathering stacks of empty totes from each individual packer's station and loading the empty plastic totes onto a cart. (D. MSJ App. 38, 40-41.) Once a tote runner loads the cart, which can hold up to ten stacks of twelve totes, the tote runner then pushes the cart to a tote staging area. (*Id.*) From there, the tote runner slides the stacks of totes off the cart and returns to singles packing to repeat this process as needed. (D. MSJ App. 38, 40-41, 42.)

Under Capps, Harris was assigned to run totes either "two or three times a week" or "two to four times a week." (D. MSJ App. 52-53. 60.) When he was not assigned to tote running, Harris worked primarily on his direct path as a singles packer. (D. MSJ App. 61-22.) Harris testified that he did not remember how long he was under Capps, but he "was happy" during this time because he was assigned to run totes on the "high side."[5] (D. MSJ App. 53-54.) Harris testified that during his time reporting to Capps, he did not remember if he saw any females running totes, but he believes it was "possible" (D. MSJ App. 49, 84), and women were used to "replace" male tote runners when needed (D. MSJ App. 92). According to Harris, there was a group of five to eight regular tote runners who were all males (D. MSJ App. 55), but when asked at his deposition if he knew how that group was determined, Harris testified that he was "told" by "prior tote runners" that managers just "pick new guys" and see if "they can do tote running" (D. MSJ App. 56).

---

[5] At FTW6, singles packing is divided into a "high side" and "low side," with one or more tote runners assigned to each side. (*See* D. MSJ Br. at 5.) Harris estimated the distance between the low side to the tote staging area is about twice as far (1/8 of a mile) as the high side (1/16 of a mile). (D. MSJ App. 39, 43-44.)

Chapman became Harris's manager in February or March 2022. (D. MSJ App. 59.) At some point, Harris told Jene Williams, another manager on the floor who was not Harris's manager, that he really did not want to work on the low side. (D. MSJ App. 45-46.) According to Harris, this discussion was informal, and they were "just chatting." (D. MSJ. App. 46-47.) In any event, Harris told Williams that he would "rather run totes on the high side every day" than run totes on the low side. (D. MSJ App. 47-48.) Shortly thereafter, he was switched to the high side and testified that "at the time, [he] was happy" about it. (D. MSJ App. 54.) Harris started tote running on the high side four times per week, but later decided "that's not what [he] necessarily wanted either." (D. MSJ App. 54, 60.)

Harris alleges he "reported his concerns that only men pushed totes, on multiple occasions." (Compl. ¶ 6.) The response from his managers was that tote running was "too hard for women." (*Id*. ¶ 6; *see also id*. ¶ 28.) He also alleges that when he asked to be relieved of tote running due to physical exhaustion, management would initially agree, but then never follow through. (*Id*. ¶ 6.) Harris admitted, however, that when he requested to be removed from low side totes because he was tired, his request would sometimes be accommodated and sometimes not. (D. MSJ App. 51.) He also admitted that when his request was not accommodated, it was likely because there was no one available to replace him. (*Id*.)

On or about April 13, 2022, after Chapman assigned Harris to the low side as opposed to the high side, Harris told Chapman that due to tote running, "his knees experienced pain/agony" and he "wish[ed] not to be a tote runner any longer. (*Id*. ¶

10

9; D. MSJ App. 60-61.)    Chapman told him that he could "just go home."  (D. MSJ App. 64-66, 105-110.)  Harris reported this incident to Amazon HR Partner Garrett Martin.  (D. MSJ App. 64-66, 68, 105-110.)  Harris advised Martin that while he was comfortable tote running on the high side, he could not run totes on the low side, and he wanted to make this known for the record.  (D. MSJ App. 65-66, 105-110.)  Harris alleges that during this conversation, Martin asked him whether he needed an accommodation for this knee pain.  (Compl. ¶ 9.)  Harris replied that "he did not have any issues before with his knees and did not wish to report any prior pains in [his] knees." (*Id.*)  Harris did not mention anything about gender during his discussion with Martin.  (D. MSJ App. 65, 67, 105-110.)  Nor did he mention any sort of gender disparity to Chapman.  (D. MSJ App. 125.)  Harris moved to singles packing for the remainder of his shift and in late April 2022, he was no longer assigned to tote running.  (D. MSJ App. 68, 69-70.)

At some point after Harris filed his lawsuit in October 2022, he had a conversation with Operations Manager Matthew Ratley, in which Harris opined that Amazon should compensate tote runners with additional pay and should also seek volunteers.  (D. MSJ App. 57, 58, 122.)  Harris and Ratley offer slightly different versions of their conversation.  Harris testified that when he told Chapman that he had filed a lawsuit, Ratley "came running over" and asked what was going on, to which Harris opined that tote runners should get paid more, and "even women probably would volunteer."   (D. MSJ App. 57.)  Ratley states that the conversation occurred after an associate approached Ratley to tell him that "Harris was passing

around some sort of petition on the singles packing floor," and during their conversation, "Harris stated his belief that associates assigned to tote running should be paid double for performing that indirect role because it was so labor intensive." (*Id.*)  According to Harris, Ratley replied that "he just felt like it was better for men to do it." (D. MSJ App. 57.)  According to Ratley, however, he "never told [Harris] that [he] felt it was better for men to do tote running, or anything to that effect." (D. MSJ App. 122).  Ratley also stated that, Harris did not "mention anything about gender during this conversation or otherwise state that he felt discriminated against or treated unfairly for any other reason." (*Id.*)

Harris took an unpaid leave of absence from March 17, 2023, through May 1, 2023, "because of stuff" including "because of this lawsuit" and taking time to complete paperwork and prepare discovery.  (D. MSJ App. 76-78.)  It appears Harris might have returned to work for a day or so around May 2 or May 3, and then took another leave through June 2023, because he was still "working on this case." (D. MSJ App. 78-79.)  When Harris returned to work in June 2023, he was assigned to singles packing and was not doing any tote running.  (D. MSJ App. 80.)

Harris applied for a third leave of absence, which was denied because Harris had already used too much unpaid protected time ("UPT").  (D. MSJ App. 81-82.)  Harris stated he did not have much choice at the time because he and his wife were moving, and he did not have any more UPT to take time off work.  (*Id.*)  Harris does not claim that there was anything discriminatory about the leave denial.  (*Id.*)  He voluntarily resigned via job abandonment as of July 26, 2023.  (D. MSJ App. 82-83,

111.)  Harris does not contend that anything related to his separation of employment

from Amazon was discriminatory.  (D. MSJ App. 83.)

Amazon represents that Harris was provided with various workplace policies

and employment procedures upon hiring, including Amazon's Workplace

Harassment and Equal Employment Opportunity Policy (the "EEO Policy").  (D.

MSJ App. 14-15.)  The EEO Policy specifically prohibits discrimination against any

associate or applicant for employment on the basis of gender, among other

categories.  (D. MSJ App. 16-17.)  It further provides that anyone who believes they

have been discriminated against should report it to his or her manager, to any

member of Amazon management, or to human resources.  (D. MSJ App. 17.)

Harris testified that he did not recall ever filing a complaint of gender discrimination

with human resources.  (D. MSJ App. 63.)  Harris was also aware that he could have

requested a reasonable accommodation under the relevant disability accommodation

policy throughout his employment with Amazon.  (D. MSJ App. 97.)

Harris filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") on July 27, 2022, and was issued a Notice of

Right to Sue on July 28, 2022.  (*See* Compl. ¶¶ 16, 17.)  Harris alleges in his EEOC

charge that he was discriminated against because of his sex because "Female

Picker/Packers are rarely made to move the totes like the males."  (Dkt. No. 3 at 8.)

Harris did not attach the EEOC charge and right to sue letter to his amended

complaint (*see* Compl.), but these documents were attached to his original complaint

(*see* Dkt. No. 3 at 8-11), as well as submitted with Amazon's summary judgment appendix (*see* D. MSJ App. 112).

Harris alleges discrimination in violation of the Civil Rights Act on the basis of his sex because female packers were not required to be tote runners like male packers.  (*See generally* Compl.)  He asserts that he has been denied the same terms and conditions of employment available to women by placing him in a substantially more physically demanding position.  (*See* Compl. ¶ 39.)  Harris alleges that he has suffered mental anguish, emotional distress, depression, humiliation, loss of self-esteem, and emotional pain and suffering, as well as physical pain and suffering.  (*Id*. ¶ 41.)

## II.  LEGAL STANDARDS

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 407 (5th Cir. 2012); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009).

"A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "Factual disputes that are irrelevant or unnecessary will not be counted.'" *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Poole*, 691 F.3d at 627; *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210; *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006). The moving party, however, need not negate the elements of the nonmovant's case. *See Bayle*, 615 F.3d at 355; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir. 2004).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting Fed. R. Civ. P. 56(e)); *Anderson*, 477 U.S.

15

at 256; *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013); *Bayle*, 615 F.3d at 355; *EMCASCO Ins. Co.*, 438 F.3d at 523.  "[T]he court must review the record 'taken as a whole.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); s*ee Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005).  All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility.  *Reeves*, 530 U.S. at 150; *Downhole Navigator, LLC v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009).  The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in its favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009).  The evidence is construed "'in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'"  *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013) (quoting *Boudreaux*, 402 F.3d at 540).

Furthermore, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence."  *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S.

451, 469 n.14 (1992)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468-69; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014); *Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294-95 (5th Cir. 2007). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *accord Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012); *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993);

*Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010) (internal quotations omitted). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

When, however, a party moves for summary judgment on a claim on which that party will have the burden to prove at trial, "the movant 'must establish beyond peradventure all of the essential elements of the claim[.]'" *Timilsina v. Bryson*, No. 3:22-CV-1327-D, 2023 WL 5517218, at *3 (N.D. Tex. Aug. 25, 20232) (quoting *Bank One, Texas, N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (internal quotation marks omitted)). This requires showing both that there is no genuine and material fact dispute and that the movant is entitled to judgment as a matter of law. *Id.* "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Id.* (quoting *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923–24 (N.D. Tex. 2009) (internal quotation marks omitted)).

When, as here, both sides of the dispute move for summary judgment, "the court recounts the evidence that is undisputed and, when it is necessary to set out

18

evidence that is contested, does so favorably to the side who is the summary judgment nonmovant in the context of that evidence." *Id.*; *see also Springboards To Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 811 (5th Cir. 2019). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980). The rationale for this rule is that "each party moving for summary judgment may do so on different legal theories dependent on different constellations of material facts." *Bricklayers, Masons & Plasterers Int'l Union of Am., Loc. Union No. 15, Orlando, Fla. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975). Nonetheless, "cross-motions for summary judgment may be probative of the non-existence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Petro Harvester Operating Co., L.L.C. v. Keith*, 954 F.3d 686, 700 (5th Cir. 2020) (quoting *Bricklayers*, 512 F.2d at 1023).

## III. ANALYSIS

### A. Harris has not shown that he is entitled to summary as a matter of law.

The basis for Harris's discrimination claim is that Amazon does not schedule women at the same rate as men for heavy-duty-type assignments, specifically the assignment of tote running. (*See* P. MSJ Br. at 2.) Amazon responds that tote running and other indirect job assignments were made based on the availability of

19

trained personnel and Amazon's business needs and demands for each particular shift, not based on gender. (*See generally* D. Resp. Br.)

Title VII of the Civil Rights Act makes it unlawful for an employer to discriminate against an individual based on race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e–2; *Thornton v. Dallas Indep. Sch. Dist.*, No. 13–CV–3012–P, 2014 WL 46398, at *3 (N.D. Tex. Jan. 6, 2014). Harris does not present any direct evidence of discrimination, nor does he contend that any such direct evidence exists. Therefore, he must prove his case with circumstantial evidence. When a plaintiff relies on circumstantial evidence to prove discrimination under Title VII, his claims are analyzed through the framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Under that framework, a plaintiff must establish a prima facie case of discrimination before the case may proceed. *See id*.

Under this framework, Harris bears the initial burden of creating a prima facie case. *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 648–49 (5th Cir. 2025). To carry this initial burden, he must show he: (1) belongs to a protected group; (2) was qualified for the position at issue; (3) suffered some adverse employment action by the employer; and (4) was treated less favorably than other similarly situated employees outside his protected group. *Id*. If he fails to satisfy this initial burden, the inquiry ends. *See id*. If he succeeds in making such a showing, however, only then does the burden shift to Amazon to articulate a legitimate, nondiscriminatory reason for its decisions. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d

20

507, 512 (5th Cir. 2001). Once Amazon does so, the burden shifts back to Harris to prove that Amazon's stated reason is a pretext for discrimination, i.e., "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original). At all times throughout the analysis, Harris maintains the ultimate burden of proving he has been subjected to intentional discrimination. *Id.* at 508. Harris falls short of establishing a prima facie case of discrimination.

### 1. Amazon's Objections to Harris's Summary Judgment Evidence

The Court may only consider admissible evidence in considering motions for summary judgment. *See Cruz v. Aramark Servs., Inc.*, 213 F. App'x 329, 334 (5th Cir. 2007); *see also Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004) ("The admissibility of summary judgment evidence is subject to the same rules of admissibility applicable to a trial."). During summary judgment proceedings, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

In addition to demonstrating that admissibility of the proffered evidence, a party must "articulate the precise manner in which the submitted or identified evidence supports his or her claim." *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 273 (5th Cir. 2009). A party must also support its factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or

other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also* N.D. Tex. L. Civ. R. 56.5(c) ("When citing materials in the record, as required by Fed. R. Civ. P. 56(c)(1)(A) or (B), a party must support each assertion by citing each relevant page of its own or the opposing party's appendix."). The Court does not consider any unsupported factual assertions. *See Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795-96 (5th Cir. 2015) (recognizing pro se plaintiff's statements in summary judgment response which lacked evidentiary support were not "evidence usable on summary judgment").

Amazon objects to most of the evidence submitted by Harris in support of his motion. (*See* D. Resp. Br. at 25-28.) Amazon also objects to factual assertions in Harris's supporting brief that lack any evidentiary support or citations to evidence as required under Fed. R. Civ. P. 56(c)(1)(A) and Local Rule 56.5(c). (*See* D. Resp. Br. at 25.) Amazon also points out that Harris attempts to incorporate allegations from his original complaint (Dkt. No. 3) into his brief (*see* Dkt. No. 72-1 at 2). Amazon's objections in this regard are noted but not necessary, as the Court is well aware that allegations in pleadings are not competent summary judgment evidence. *Larry v. White*, 929 F.2d 206, 211 (5th Cir. 1991); *see Anderson*, 477 U.S. at 250 (a party opposing a motion for summary judgment cannot rest upon mere allegations or denials in the pleadings or papers but instead must set forth specific facts demonstrating a genuine issue for trial).

Amazon next objects to the exhibits submitted by Harris to support his summary judgment motion.[6]  (*See* D. Resp. Br. at 25-28.)  Harris's exhibits consist primarily of photographs and declarations.  (*See generally* P. MSJ Br.; *see* Dkt. Nos. 72-2-72-26.)  The photographic exhibits purport to show examples of the staffing boards and the work area in general, and the declarations (from Harris and other Amazon associates) purport to authenticate the photographs or state the declarant's observations about which associates performed the tote running function and how those associates were selected.  (*See* Dkt. Nos. 72-2 to 72-26.)

Amazon argues that the photographic evidence is not properly authenticated and that statements in various declarations contain inadmissible hearsay or are impermissibly conclusory.  (*See* D. Resp. Br. at 25-28.)  Harris responds that the photographs were properly authenticated by witness declarations pursuant to Fed. R. Evid. 901(b)(1), or by their distinctive characteristics pursuant to Fed. R. Evid. 901(b)(4).  (*See* P. MSJ Reply at 6-9.)  Harris also argues that these photographs were submitted to Amazon, which Amazon used during its deposition of Harris.  (*See id.* (citing D. Resp. App. 85, 131, 132, 140, 141).)

---

[6] Objections to evidence offered in support of, or in opposition to, motions for summary judgment are considered in conjunction with the actual motion for summary judgment as opposed to a separate motion to strike.  *See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) ("Under the now-applicable Rule 56(c)(2) . . . it is no longer necessary for a party to file [a motion to strike]; instead, the party may simply object to the material."); *Smith v. Palafox*, 728 F. App'x 270, 275 (5th Cir. 2018) (citing *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) ("[T]he new rule allows a party to object 'that the material cited to support or dispute a fact cannot be presented in a form that would be admissible as evidence.'")).

Rule 56 allows a party to submit declarations to support or oppose a motion for summary judgment.  *See* Fed. R. Civ. P. 56(c)(1)(A); *see also* 28 U.S.C. § 1746 (allowing unsworn declarations to be submitted under penalty of perjury).  But those declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

"To satisfy the requirement of authenticating or identifying an item of evidence [such as a photograph], the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  A party can choose to satisfy this requirement by submitting "[t]estimony that an item is what it is claimed," either through a supporting declaration or affidavit.  Fed. R. Evid. 901(b)(1).  But there are other ways a proponent can satisfy the authentication requirement.  For instance, a document may be authenticated by considering the appearance, contents, substance, or other distinctive characteristics of the item, taken together with all the circumstances.  Fed. R. Evid. 901(b)(4).  Under Federal Rule of Evidence 902, some evidence may also be self-authenticating.  Fed. R. Evid. 902.

With respect to Amazon's objections to Harris's photographic evidence (Dkt. Nos. 72-2, 72-3, 72-4, 72-5, 72-6, 72-7, 72-8, 72-9, and 72-26), because the undersigned has not found it necessary to consider these photographs for purposes of this summary judgment opinion, Amazon's objections need not be resolved.  *See BB Energy LP v. Devon Energy Prod. Co. LP*, No. 3:07-CV-0723, 2008 WL 2164583, at *3

24

(N.D. Tex. May 23, 2008) ("The Court does not need to evaluate the admissibility of evidence that is not necessary to its summary judgment ruling."); *see also Liszt v. Karen Kane, Inc.*, No. 3:97-CV-3200-L, 2001 WL 739076, at *4 (N.D. Tex. June 26, 2001) ("Often, challenged items of evidence will not affect the court's determination of the issues, and a resolution of the admissibility will be unnecessary.").

Next, Amazon objects to several statements contained in various declarations submitted by Harris. (*See* D. Resp. Br. ¶¶ 9-15.) Upon review, the undersigned agrees that the following statements constitute inadmissible hearsay:

- I remember speaking with others regarding this point. (Dkt. No. 72-11, Declaration of Chad Harris.)

- She stated she was 5'3 and we talked about how he looked shorter than her. We spoke regarding him being so short, that he could not see over the tote cart. (Dkt. No. 72-13, Declaration of Chad Harris.)

- I personally witnessed Chad Harris state that it was because of his knee pain. (Dkt. No. 72-22, Declaration of Annaleah Miner.)

- I personally witnessed Chad Harris state that he was having problems on stairs because of his knee pain. (Dkt. No. 72-23, Declaration of Ysabella Harris.)

Accordingly, Amazon's objections to these statements as inadmissible hearsay are sustained. (*See* D. Resp. Br. ¶¶ 9, 10, 12, 13, 14.) *See Akin v. Q–L Invs., Inc.*, 959 F.2d 521, 531 (5th Cir. 1992) ("On a motion for summary judgment, the district court should disregard only those portions of an affidavit that are inadequate and consider the rest."). Amazon also objects to the following statement as hearsay: "I only witnessed men pushing totes, except for one female who said she volunteered to push totes." (Dkt. No. 72-24, Declaration of Chad Harris.) The undersigned finds that

25

the statement "except for one female who said she volunteered to push totes" is hearsay, but Harris stating that, save for one woman, he saw only men pushing totes is not hearsay.  Accordingly, the undersigned disregards the objectionableportion and considers the rest.  *See Akin*, 959 F.2d at 531.

Amazon also objects to the following statement: "I personally witnessed that while employed at Amazon, single packing had a ratio of at least 2 to 1 female to male." (Dkt. No. 72-15, Declaration of Chad Harris.)  The undersigned agrees that the statement is impermissibly conclusory, and Amazon's objection is likewise sustained.  (*See* D. Resp. Br. ¶ 11.)

Finally, Amazon objects to the following statement in Harris's declaration: "He questioned me regarding my EEOC claim and pending lawsuit.  I spoke to Matthew Ratley about how I felt it wasn't right that Amazon didn't have to hire people for specific physically harder job assignments, and that they got around it by bait and switching only men." (Dkt. No. 72-25, Declaration of Chad Harris.)  To the extent Harris offers this statement to prove only that he made this statement to Ratley, thereby giving Amazon notice of his complaint, it is not hearsay.  However, if Harris offers the statement to prove the truth of the matter asserted, Fed. R. Evid. 801, for example, to prove that Amazon pulled a "bait-and-switch" or that only men were assigned to tote running, the statement is hearsay and will not be considered for that purpose.  In any event, because the statement fails to create a fact issue on summary judgment, the undersigned declines to strike it.  *See, e.g.*, *Wile v. Abbott*, 459 F. Supp. 3d 803, 809 (N.D. Tex. 2020); *Williams v. The Thrift Store*, 4:14CV101, 2015

26

WL 5578322, at *2 (E.D. Tex. Sept. 22, 2015) (declining to strike pro se plaintiff's unauthenticated and otherwise inadmissible evidence from summary judgment proceeding because the evidence failed to create a fact issue in summary judgment proceeding).

### 2. Harris has not established a prima facie claim of gender discrimination.

Amazon does not dispute the first two prima facie elements—that Harris is a male and was qualified for his position, but Amazon contends that Harris fails to satisfy the third and fourth prongs of his prima facie claim. (*See* D. Resp. Br. at 15-17.) The undersigned agrees. The undisputed summary judgment evidence does not support a finding that being assigned to tote running constitutes a materially adverse employment action as a matter of law. Nor does the summary judgment evidence identify any similarly situated female employee who was treated more favorably under nearly identical circumstances.

### a. Harris has not established that being assigned to tote running constitutes an adverse employment action as a matter of law.

To determine whether discrimination is material to trigger the various employment discrimination laws, a plaintiff need not show "discrimination with respect to an 'ultimate employment decision'" but instead only "that [he] was discriminated against, because of a protected characteristic, with respect to . . . the 'terms, conditions, or privileges of employment'—just as the statute says." *Hamilton*, 79 F.4th at 506 (quoting 42 U.S.C. § 2000e-2(a)(1)). *Hamilton* recognized that Title VII "does not permit liability for de minimis workplace trifles" but declined to

address "the precise level of minimum workplace harm" necessary to sustain a discrimination claim. *Id.* at 505.

Then, in *Muldrow v. City of St. Louis*, the Supreme Court held that "[a]lthough an employee must show some harm . . . to prevail in a Title VII suit, [he] need not show that the injury satisfies a significance test." 601 U.S. 346, 350 (2024). In particular, the plaintiff needs to show that he was left "worse off" because of the employment action taken. *Id.* at 359; *see Liao v. Univ. of Tex. at San Antonio*, SA-22-CV-01359-XR, 2024 WL 4564278, at *9 (W.D. Tex. Oct. 23, 2024) (considering what counts as a discriminatory adverse action after *Hamilton* and *Muldrow* and concluding that, while "[t]he Fifth Circuit has not definitively addressed the precise level of minimum workplace harm necessary to establish an adverse action, besides stating that something more than de minimis harm is required," "[b]eing placed in a disadvantageous situation likely suffices" (cleaned up)).

Harris testified that he was assigned to tote running at various times over the course of approximately five months—sometime in mid or late December 2021, through approximately April 13, 2022, the date Harris filed this lawsuit. (D. Resp. App. 99-100.) On or shortly after April 13, 2022, Amazon no longer assigned him to tote running. (*See id.*) Harris also testified that during the time he reported to Capps, he was assigned to run totes either "two or three times a week," or "two to four times a week." (*Id.* 79-80.) He also testified that during this time, at least when he was assigned to run totes on the "high side," he "was happy." (*Id.* 80-81.) Amazon contends that Harris "has not pointed to any evidence that tote running is objectively

28

'worse' than any other assignment Fulfillment Associates may be assigned on any given shift" and "fails to establish that being assigned to tote running, in and of itself, is 'adverse.'" (D. Resp. Br. at 17.)  The undersigned agrees.

Under *Hamilton* and *Muldrow*, most of Harris's allegations are no more than de minimis workplace trifles.  Whether particular conduct "is materially adverse depends upon the circumstances of the particular case." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006).  Although Harris alleges that tote running was more difficult, more labor intensive, and a physically heavier job assignment (*see generally* P. MSJ Br.), the only evidence to support this is Chapman's conclusory statement that "tote running was . . . much more physically demanding job assignment than singles packing." (Dkt. No. 72-10.)  But as Amazon points out, "several associates often volunteered for tote-running and asked to be assigned to tote-running" (D. MSJ Br. at 17; D. Resp. App. 179, 183; *see also* D. MSJ App. 95.) Amazon presents evidence showing that associates preferred tote running for various reasons, including, but not limited to, the fact that it was considered a reflection of trust to receive that assignment, it offered associates variety in their work, and tote runners were not subject to productivity metrics (which were tracked in direct path assignments). (D. MSJ App. 118, 122-123.)

Here, Harris has not shown that being occasionally assigned to tote running brought about any disadvantageous change to any employment term or condition, and therefore, he has not shown that it had any material effect on the terms, conditions, or privileges of his employment.  The record evidence demonstrates that

tote running was a temporary, non-punitive assignment that was within Harris's job description; that did not alter his pay, title, benefits, or promotional opportunities; and was subject to reassignment upon request. (D. MSJ Br. at 16; D. MSJ App. 51, 60-61, 68.) Harris understood that his assignment and his assigned work area could vary based on Amazon's needs (D. MSJ App. 75), and he acknowledged that when he requested to be taken off tote running because he was tired, his request was usually granted. (D. MSJ App. 51-52, 68). Harris also testified that he was happy running totes on the high side. (D. MSJ App. 47, 48, 52-53, 53-54.) While Harris may not have preferred tote running, his subjective preference for other tasks cannot transform routine staffing decisions into an adverse employment action. *See Architectural Granite & Marble, LLC v. Pental*, No. 3:20-CV-295-L, 2024 WL 3683713, at *23 (N.D. Tex. Aug. 6, 2024) (finding that subjective preferences do not qualify as materially adverse actions because the standard is an objective one) (citing *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 485 (5th Cir. 2008) (in turn, citing *Burlington N. & Sant Fe Ry. Co.*, 548 U.S. at 71))); *Reyna v. Epiroc Drilling Sols., LLC*, No. 3:23-CV-1005-X, 2025 WL 317568, at *21 (N.D. Tex. Jan. 28, 2025), *reconsideration denied*, 2025 WL 361406 (N.D. Tex. Jan. 31, 2025) (Plaintiff's subjective perception that cleaning was objectively worse than desk work was not enough to establish adverse action); *see also Keen v. Merck Sharp & Dohme Corp.*, 819 F. App'x 423, 426–27 (7th Cir. 2020) (concluding that "a mere subjective preference" is insufficient to establish a "triable issue" on the question of an adverse action in discrimination

case).  For these reasons, the undersigned finds, as a matter of law, that Harris has

not shown that he suffered an adverse employment action.

> ### b. Harris has not identified any similarly situated female employees treated more favorably under nearly identical circumstances.

Harris's prima facie case also fails because he does not identify any similarly

situated female employees whom Amazon treated more favorably under nearly

identical circumstances.  *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir.

2009).  To carry his burden on this element, Harris must identify a female employee

not selected to run totes who held the same job or responsibilities as Harris, who

shared the same supervisor or had her employment status determined by the same

person, and who had an essentially comparable employment history.  *See id.*  Harris

cannot rely on general assertions to carry his burden.  Rather, Harris must "present

prima facie evidence that [he] individually was treated less favorably than a specific

similarly situated employee."  *Okeke v. Adm'rs of Tulane Educ. Fund*, No. CV 20-450,

2021 WL 2042213, at *9 (E.D. La. May 21, 2021), *aff'd*, 2022 WL 1025991 (5th Cir.

Apr. 6, 2022) (unpublished).

Although Harris makes a number of general assertions about the ratio of

women to men, the frequency of female tote running assignments compared to male

assignments, Amazon "bait and switching only men" for physically heavier job

assignments, and the "mathematical impossibility" of "AI driven random selection

of tote runners," none of these assertions are supported by competent summary

judgment evidence showing Harris was treated less favorably than female employees.

(*See generally* P. MSJ Br.)  Even if Harris had presented evidence showing that males were assigned to run totes more frequently than females, this would be insufficient to carry Harris's burden at this stage.  A plaintiff pursuing an individual claim of discrimination may not rely on general statistical evidence to establish a pattern of discrimination.  *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008); *see also Thompson v. Leland Police Dep't*, 633 F.2d 1111, 1114 (5th Cir. 1980) ("[S]tatistical evidence alone does not establish or necessarily imply racially discriminatory practices."); *Okeke*, 2021 WL 2042213, at *9 (finding that statistics reflecting "heavier workloads imposed on . . . all non-white women, to show that Plaintiff was treated less favorably than white male residents" were not evidence of disparate treatment).

The record evidence also demonstrates that Harris has provided inconsistent and conflicting testimony as to whether women were assigned to tote running.  For example, Harris admits that there were males within his department who were not assigned to tote running.  (*See* D. Resp. App. 83.)  He stated in his July 2022 EEOC Charge, that Amazon "has provided better terms and conditions of employment towards female Picker/Packer[s] in that they do not have to do their function as a Packer in the moving of the totes.  Female Picker/Packers are rarely made to move the totes like the males."  (*See* D. Resp. App. 173.)  But during his deposition, Harris testified that he was *not* alleging that female were *never* made to move totes and that it was possible that females would do tote running if all the other tote runners were gone.  (*See* D. Resp. App. 129.)  He also admitted that he did not remember these

32

details because it was so long ago. (*Id.*) Yet, Harris's summary judgment brief and supporting declarations make several bold assertions that directly conflict with this testimony. (*See, e.g.*, Dkt. Nos. 72-11, 72-19.)

Harris also admits that much of his case is based on personal observations during his time at Amazon and his belief—supported by "posts on different Internet sites," such as Reddit and Facebook—that Amazon intentionally discriminated against men. (*See* D. Resp. App. 150.) Harris admits, however, that he lacked personal knowledge about much of what transpired at the fulfillment center. (*See* D. Resp. App. 159.) Thus, the only evidence Harris offers in support of the fourth prima facie element—that similarly situated female employees were treated more favorably—is his own self-serving observations supported by information he gleaned from the Internet. Furthermore, this evidence is undermined by Harris's testimony that he had little personal knowledge about fulfillment center operations and did not remember whether females may have occasionally done tote running. Therefore, Harris fails to present any competent summary judgment evidence on this element.

In addition to these evidentiary failures, Harris fails to point to any evidence demonstrating that a specific female fulfillment associate who was not assigned to tote running could be considered "nearly identical" to him, which he must do to carry his burden at this stage. *Noble v. Lear Siegler Servs., Inc.*, 554 F. App'x 275, 276 (5th Cir. 2014) (holding that summary judgment was properly granted for employer where employee failed to present "evidence regarding the comparators' job descriptions, qualifications, experience, work and disciplinary history, or other

33

information that would indicate that they were similarly situated); *see also Cerda v. Blue Cube Ops., L.L.C.*, 95 F.4th 996, 1003 (5th Cir. 2024) (affirming summary judgment for employer in Title VII discrimination case in light of employee's failure "to point to evidence that these other co-workers were similarly situated"). Accordingly, Harris has failed to meet his burden to establish the existence of any genuine issue of material fact on the fourth prima facie element.

Because Harris has not established that being assigned to tote running constitutes an adverse employment action and has not identified any similarly situated female employees treated more favorably under nearly identical circumstances, his discrimination claim fails as a matter of law.

### 3. Amazon has established legitimate, nondiscriminatory reasons for Harris's work assignments.

As noted above, if Harris fails to satisfy this initial burden, the inquiry need not go further. *See Shahrashoob*, 125 F.4th at 648–49. But even if Harris did establish his prima facie discrimination claim, the undesigned concludes that Amazon has articulated legitimate, nondiscriminatory reasons for Harris's work assignments. *See Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993) (recognizing a defendant need only articulate lawful reason for adverse employment action, regardless of persuasiveness). This showing involves "no credibility assessment," and once it is met, the plaintiff (who at all times retains the ultimate burden of persuasion) has the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant [i.e., the employer] were not its true

34

reasons, but were a pretext for discrimination." *Moghalu v. Bd. of Supervisors for the Univ. of La. Sys. for Nw.*, 643 F. App'x 326, 330 (5th Cir. 2016) (internal citations omitted).

Amazon's evidence establishes that it assigned associates in the singles packing department using the SCC software, which placed Fulfillment Associates on a given shift based on the unique demands of that shift and on the roles that they had been trained to perform. (*See* D. Resp. App. 179.) Prior to being assigned to an indirect role (including tote running), an individual associate must be trained in that role. (*See* D. Resp. App. 178-179, 182.) If an individual is not trained in an indirect path, they are limited to working in their direct paths. (*See* D. Resp. App. 178, 182.) Individuals are selected to train in an indirect role based on the department's needs at any given time. (*See* D. Resp. App. 179, 182.) For example, if Amazon has a sufficient number of associates who are trained in an indirect path for that indirect path, they do not seek volunteers for associates to train in that indirect path. (*Id.*) Accordingly, whether Amazon is seeking volunteers to train in any indirect path varies from time to time, and managers would then make any adjustments based on available personnel and business needs before making assignments. (*Id.*)

Based on the foregoing, Amazon has carried its burden to articulate a legitimate, nondiscriminatory reason for the job assignments about which Harris complains. (*See* D. Resp. App. 179-180, 184-185.)

### 4. Harris has not shown, as a matter of law, that Amazon's stated reasons for Harris's work assignments are pretext for gender discrimination.

Harris bears the ultimate burden of proving that Amazon intentionally discriminated against him. *Hicks*, 509 U.S. at 508. Because Harris has not produced admissible evidence sufficient to demonstrate that Amazon's stated reasons for its job assignments were pretext for gender discrimination, he is not entitled to summary judgment in his favor. Here, the evidence shows that Amazon's process—consisting of computer-generated assignments based on shift needs and prior training with managers making adjustments as needed to meet specific business conditions—was structured and neutral. An employer's reliance on operational requirements and staffing software constitutes a legitimate, non-discriminatory reason. *See Bodenheimer*, 5 F.3d at 958 (employer need only articulate lawful reason, regardless of persuasiveness). Harris offers no evidence that these reasons were false or that gender bias was the real motive. In fact, Harris testified that he had no knowledge of how managers made job assignments or their decision-making process. (*See* D. MSJ App. 29-30.)

Harris also testified that he believed it was "a nationwide thing" and "a culture" that Amazon intentionally discriminated against men and that his beliefs were based on information he learned on Internet posts from "Reddit, Facebook, [and] things like that." (D. MSJ App. 93-94.) Thus, Harris provides nothing more than his subjective beliefs and unsupported conclusory assertions, which are insufficient to demonstrate "pretext or even establish[] the existence of a genuine

dispute of material facts regarding pretext." *Johnson v. Fred's Stores of Tenn., Inc.*, 115 F. App'x 196, 197 (5th Cir. 2004) ("[Plaintiff's] subjective beliefs and unsupported conclusional assertions fail to satisfy his burden of demonstrating pretext or even establishing the existence of a genuine dispute of material facts regarding pretext.").

Harris may disagree with Amazon's stated reasons for his work assignments, but "[s]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LaMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (citation omitted).  To create a fact issue, Harris must instead "adduce evidence supporting an inference that [Amazon's] motive was [gender]-based animus, or at the least, that [Amazon's] explanation of its motive is false." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) (citing *Evans v. City of Hous.*, 246 F.3d 344, 355 (5th Cir. 2001)).  This he has failed to do.  Therefore, there is no genuine issue of material fact on this issue.

**B.      For the same reasons stated above, Amazon is entitled to summary judgment of Harris's discrimination claim.**

Amazon has demonstrated that it is entitled to summary judgment of Harris's discrimination claim as a matter of law.  Viewing the evidence and drawing all reasonable inferences in Harris's favor, Harris is unable to avoid summary judgment because the evidence does not establish that the requisite prima facie elements discussed above are satisfied.

In accordance with the Court's local rules, Amazon's summary judgment motion is supported by a brief which sets forth the facts, arguments, and authorities

entitling it to judgment as a matter of law, *see* N.D. Tex. L.R. 56.3(b), and a separate, self-contained appendix with the evidence it relies on for factual support, *see* N.D. Tex. L.R. 56.5(a).  Harris's response, on the other hand, does not comply with the local rules as he did not file his brief as a separate document from the response, *see* N.D. Tex. L.R. 56.5(a), and he attaches material that is neither properly identified, labeled, nor paginated.[7]  *See* N.D. Tex. L.R. 56.6(b).  Nevertheless, in deference to Harris's status as a pro se litigant, the undersigned considers Harris's noncompliant response and appendix.

    In his opposition to Amazon's motion for summary judgment, Harris rehashes the same generalized observations and unsupported speculative beliefs expressed in his own motion, which is insufficient to avoid summary judgment.  *See Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) ("A non-movant will not avoid summary judgment by presenting speculation, improbable inferences, or unsubstantiated assertions." (citation and quotation omitted)).  In the instances where Harris does attempt to assert facts in opposition to Amazon's summary judgment motion, he fails to satisfy his obligation to support his assertions with competent record evidence. (*See generally* P. Resp. Br.)

    Furthermore, many of Harris's factual assertions have no citation to the record at all, and where he does reference some record material, he does not cite to

---

[7] The attachment appears to be a two-page excerpt from his own deposition, which Harris presents as evidence of purported false statements in Amazon's brief.  (*See* P. Resp. Br. at 2.)

Amazon's appendix, nor does he submit or cite to his own appendix, instead vaguely citing to unspecified declarations or deposition testimony. (*See, e.g.*, P. Resp. Br. at 7 ("[T]hrough Declarations, we have the fact that the whole building both singles packing and on the other side of the building stowe/picking scheduled only men to push totes in general, it shows a pattern, practice and a general rule, that it was how the Defendant wanted the location to choose tote runners.")) Accordingly, there is no way for the Court to readily discern whether such material might be found somewhere in the existing record or, if it could be found, where to locate it. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."); *see also Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (noting that "the traditional leniency afforded to a pro se plaintiff does not excuse [plaintiff] from [his] burden of opposing summary judgment through the use of competent summary judgment evidence").

### 1. Harris's Objections to Amazon's Summary Judgment Evidence

Harris first attempts to undermine Amazon's summary judgment evidence as "absurd and unbelievable." (*See* P. Resp. Br. at 8-11.) For example, Harris asserts that Ratley's declaration is "so obscenely over the top that [he] believes the Court will see it for what it is." (*See id.* at 9.) Harris also points out information he believes was overtly omitted from Amazon's proffered declarations such as neither Capps nor

Chapman directly stating that they picked women for tote running.  (*See id*. at 9, 10-11.)  However, Harris does not provide any legal analysis or argument challenging the admissibility of Amazon's evidence or explain why the Court should not consider the evidence.

Although Harris asserts that he "could object" to the portion of Ratley's declaration recounting his conversation with Harris as hearsay "because the statement was referring to what [Harris] said" (*see id*. at 9), evidence submitted by both parties establishes that Harris and Ratley have recounted similar narratives of a conversation between them where Harris allegedly stated Amazon should compensate tote runners with additional pay (*see, e.g.*, D. Resp. App. 183; D. MSJ App. 57, 58, 122; Dkt. No. 72-25).  Just as with Harris's version of the conversation, if Ratley's statement was offered to prove that Harris made the statement to Ratley, rather than offered to prove "the truth of the matter asserted," Fed, R. Evid. 801, the statement is not hearsay.

Finally, to the extent Harris asserts that Amazon's evidence is not believable (*see, e.g.*, P. Resp. Br. at 8-10), this goes to credibility, not admissibility, which is a question for the finder of fact.  *See Lampkin v. City of Nacogdoches*, 7 F.3d 430, 436 (5th Cir. 1993) ("To the extent that credibility questions exist . . . a fact-finder will be necessary.").  "The Court cannot make a credibility determination in light of conflicting evidence or competing inferences."  *Baylor Cnty. Hosp. Dist. v. Burwell*, 163 F. Supp. 3d 372, 377 (N.D. Tex. 2016), *aff'd sub nom. Baylor Cnty. Hosp. Dist. v. Price*, 850 F.3d 257 (5th Cir. 2017) (citing *Anderson*, 477 U.S. at 255).

**2. Harris's response does not raise any disputed facts or argument to demonstrate that Amazon is not entitled to summary judgment as a matter of law.**

In his opposition to Amazon's argument that tote running did not constitute an adverse employment action, Harris fixates on a series of conclusory assertions that are immaterial and factually unsupported. First, Harris disputes the issue of how long he spent in the tote running role, claiming that he performed that role until July 2022, rather than April 2022—the date Amazon cited with evidentiary support. (*See* P. Resp. Br. at 2.) Harris testified that he had a conversation with Chapman on April 13, 2022, during which he complained about knee pain and his tote running assignment, and after that time Amazon no longer assigned him to tote running. (*See* D. MSJ App. 60-61, 66, 68.)

Harris disputes Amazon's evidence, contending that he was assigned to tote running at the latest on July 18, 2022. (*See* P. Resp. Br. at 2.) Harris mentions "Exhibit H32" and "Exhibit H33" to support his contention, but as noted above, Harris's exhibits are not marked. Exhibit H32 purports to be page 197 of Harris's deposition, and Exhibit H33 purports to be pages 157-58 of the same. (*See id*.) Although not marked, the undersigned is able to discern that Exhibit H33 appears to be the document attached to Harris's response to Amazon's motion. (*See* Dkt. No. 85-1.) But contrary to Harris's contention, this evidence does not suggest that the April 2022 date is incorrect. In fact, the testimony supports Amazon's argument that Harris's assignment to tote running after April 2022 "significantly decreased, if it didn't stop outright." (*See* Dkt. No. 85-1 at ECF p. 2, Harris Deposition ("Harris

41

Depo."), 158:20-22.)  When asked if this was accurate, Harris replied "Well, maybe I'm wrong. Wow. I don't know.  I don't remember."  (Harris Depo. 158:23-24.) Harris's contention is therefore unsupported by any record evidence and must be disregarded for this reason.  Even construing the deposition testimony quoted in Harris's brief in his favor, it is, at best, ambiguous regarding whether Harris was assigned to tote running on or shortly after April 13, 2022 (*see* Harris Depo. 158:20-24.), while Harris's testimony elsewhere in the record that he stopped tote running on or after April 13, 2022, is clear and unambiguous (*see* D. MSJ App. 60-61, 66, 68).

In any event, how long Harris worked as a tote runner is ultimately immaterial, as the undersigned has already concluded that being assigned to run totes was not an adverse employment action, regardless of how long or how frequently Harris was assigned the job.  As previously found, tote running was a temporary, non-punitive assignment that was within Harris' job description; that did not alter his pay, title, benefits, or promotional opportunities; and was subject to reassignment upon request.  (D. MSJ Br. at 15-16; D. MSJ App. 51, 60-61, 68.) Harris's "mere subjective preference" is insufficient to establish a "triable issue" on the question of an adverse action in a discrimination case.  *Keen*, 819 F. App'x at 426–27.

Next, Harris's response confirms that he cannot identify any similarly situated female employees who Amazon treated more favorably.  Harris does not address this critical prima facie element of his case, other than his conclusory assertion that "Plaintiff identifies all women as similarly situated, in regard to this discrimination

42

case." (*See* P. Resp. Br. at 11.)  Such an unsubstantiated and conclusory assertion that a fact issue exists is insufficient to defeat summary judgment.  *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 256).  Moreover, Harris must show less favorable treatment as compared to "a specific similarly situated employee," *Okeke*, 2021 WL 2042213, at *9, which he has failed to do.   Amazon avers that there are many reasons that Harris's female counterparts may not be similarly situated for purposes of comparison, including that management seeks volunteers for training for indirect roles like tote running, and there are no set guidelines for selecting or seeking volunteers.  (*See* D. Resp. App. 121.)  Because Harris has failed to meet his burden of establishing a specific similarly situated comparator, it is impossible to assess whether Harris was treated differently because of his gender.

Finally, Harris fails to raise any disputed fact or argument regarding Amazon's asserted legitimate, nondiscriminatory reasons for Harris's work assignments and lack of pretext.  Amazon maintains that all indirect job assignments, including tote running assignments, were based on available personnel, training, and business needs and demands of the day.  (*See* D. Resp. App. 117-18, 121.)  In response, Harris has offered nothing more than his personal, rank speculation that decisions concerning who to train and assign to the tote running role were based on gender.  Furthermore, there is no requirement that Amazon recount the precise reasoning for its day-to-day staffing decisions as Harris appears to suggest.  (*See* P. Resp. Br. at 6-7.)  At this stage of the analysis, Amazon need only produce a lawful

reason for the action at issue, not persuade the Court of its strength or plausibility. *See Bodenheimer*, 5 F.3d at 958 (recognizing that a defendant need only articulate lawful reason for adverse employment action, regardless of persuasiveness).

Harris's reliance on *Patrick v. Ridge*, 394 F.3d 311 (5th Cir. 2004), for the proposition that, "when a stated reason for an employment decision is [too] subjective, it is essentially meaningless" (P. Resp. Br. at 7), is misplaced. In *Patrick*, the court found that "[an] official's subjective belief that an individual would not 'fit in' or was 'not sufficiently suited' for a job" was insufficient to satisfy the employer's burden. *Patrick*, 394 F.3d at 317. This case is unlike *Patrick*, where the defendants offered a nonspecific and unexplained reason for the employment decision—simply that the plaintiff was "not sufficiently suited" for the position. *See id*. Here, there is no meaningless "non-reason" masked as discriminatory intent. *Id*. Amazon has articulated "a more specific reason than its own vague and conclusional [sic] feeling about the employee." *Id*. It has articulated an objective process for assigning associates to tote running, and management followed that process. Accordingly, Amazon has met its burden of production.

Ultimately, Harris's position rests largely upon what he observed on his own work shifts—i.e., that men were scheduled for tote running over women. (*See* P. Resp. Br. at 7.) Additionally, Harris's contention that only men ran totes is contradicted elsewhere in the record. Harris testified that he did not remember if he saw any females running totes when Capps was his manager; but he believes it was "possible." (D. MSJ App. 49, 84.) He also testified that women were used to

44

"replace" male tote runners when needed.  (D. MSJ App. 92.)  Even in his EEOC charge, Harris admitted that women worked as tote runners, although he characterized it is "rarely."  (D. MSJ App. 112.)  Moreover, Ratley attested in his declaration that both male and female employees were assigned to tote running (see D. MSJ App. 122-23), which Harris has not controverted with competent summary judgment evidence.  Even crediting Harris's personal observations that more men than women were assigned to tote running, he has not shown that it was for discriminatory reasons.  And he plainly admitted in his testimony that that he lacks personal knowledge as to how decisions concerning assignments were made.  (*See* D. MSJ App. 29-30.)

Amazon has shown the absence of a material factual dispute as to Harris's gender discrimination claim. Viewing facts and drawing inferences in his favor, there is no evidence in the record that Harris's assignment to tote running was an adverse employment action or that Amazon made any staffing assignments based on gender. Therefore, Harris has not established the third and fourth prima facie elements of his discrimination claim.  Furthermore, even if Harris had met his prima facie burden, Amazon has articulated legitimate, non-discriminatory reasons for Harris's job assignments, and Harris has not shown that Amazon's stated reasons are a pretext for gender discrimination.

## IV.  RECOMMENDATION

For all these reasons, the undersigned **RECOMMENDS** that Harris' motion for summary judgment ((Dkt. No. 72) be **DENIED**, and Amazon's motion for summary judgment (Dkt. No. 83) be **GRANTED**.

**SO RECOMMENDED** on November 20, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## NOTICE OF RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).